**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE AUG 07 2014
Madsen, C.J.
CHIEF JUSTICE

This opinion was filed for record
at 8:00 AM on Aug. 7, 2014

Ronald R. Carpenter
Supreme Court Clerk

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CAROLINA BECERRA BECERRA, JULIO CESAR MARTINEZ MARTINEZ, ORLANDO VENTURA REYES, ALMA A. BECERRA, and ADELENE MENDOZA SOLORIO, | ) ) ) ) ) ) | No. 89534-1 |
| Respondents, | ) ) ) | |
| and | ) ) | |
| HERIBERTO VENTURA SATURNINO, JOSE LUIS CORONADO, and MOISES SANTOS GONZALEZ, | ) ) ) ) ) | En Banc |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| EXPERT JANITORIAL, LLC dba Expert JMS, and FRED MEYER STORES, INC., | ) ) ) ) | |
| Petitioners, | ) ) | |
| and | ) ) | |
| ALL JANITORIAL, LLC, SERGEY CHABAN, ALL AMERICAN JANITORIAL LLC, RAUL CAMPOS, and JANITORIAL MAINTENANCE & SUPPLY, LLC, dba JMS, | ) ) ) ) ) ) | Filed  AUG 07 2014 |
| Defendants. | ) ) | |

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Becerra v. Expert, et al.* (89534-1)

GONZÁLEZ, J.—The plaintiffs before us worked as night janitors for subcontractors in various Puget Sound Fred Meyer grocery stores. They allege that they regularly worked well over 40 hours per week without being paid either minimum wage or overtime as required by Washington's Minimum Wage Act (MWA), chapter 49.46 RCW. The merits of their action are not currently at issue. Rather, at issue is whether Fred Meyer Stores Inc. and Expert Janitorial LLC are joint employers of the janitors for purposes of the act. The MWA is based on the federal Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201-219, and we look to FLSA jurisprudence in interpreting it. While this court has never specifically held that the "joint employer" doctrine is a viable theory under the MWA, consistent with the interpretations of the FLSA, liability under minimum wage laws may extend to "joint employers" even when there is no formal employment relationship. The trial court dismissed the plaintiffs' joint employer claims against Fred Meyer and Expert, a middleman, at summary judgment. We find that summary judgment was improperly granted on this record and remand for further proceedings consistent with this opinion.

FACTS

The plaintiffs in this case, Carolina Becerra Becerra, Julio Cesar Martinez Martinez, Orlando Ventura Reyes, Alma A. Becerra, and Adelene Mendozo Solorio, all did janitorial work in Puget Sound Fred Meyer stores

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

mostly while the stores were closed and locked at night. None of the plaintiffs were formally employed by either Fred Meyer or Expert. Until 2004, Fred Meyer had employed its own, mostly unionized janitors in its Pacific Northwest grocery stores. In 2004, Fred Meyer began to outsource much of this work.

In 2007, Expert acquired the management contract to provide Fred Meyer with outsourced facility maintenance services. At the time, Expert had no janitorial employees itself but would instead "typically subcontract with independent janitorial companies, called 'Service Providers,' who provide, manage, and supervise the workers who clean the customers' stores." Clerk's Papers (CP) at 1924.[1] Expert and Fred Meyer agreed on the specific work the janitors would do and the specific price Fred Meyer would pay Expert "for completing the work to Fred Meyer's reasonable satisfaction." *Id.* at 1925. Representatives from Expert would visit the stores about once every two weeks, typically during the daytime when Fred Meyer's store directors were at work.

Between 2007 and 2010, Expert subcontracted with at least nine different second-tier subcontracting service providers, including All Janitorial LLC and All American Janitorial LLC,[2] to fulfill its contract with Fred Meyer. All of the plaintiffs worked for one or both of these two second-tier service

---

[1] At oral argument, counsel for Expert said that Expert does have its own janitorial employees but did not assign error to the trial court order finding otherwise.
[2] The record suggests that in 2010, All American formally reclassified the janitors as employees.

3

providers during the relevant time. It appears that neither contractor hired janitors who were fluent in English. *Id.* at 703; Resp'ts' Suppl. Br. at 2.

All Janitorial was owned and principally managed by Sergey Chaban.[3] By contract, the company was paid a flat fee per store by Expert. Chaban testified that All Janitorial could not afford to treat the janitors who worked at the Fred Meyer stores like employees because the contract price was insufficient. CP at 240-41 ("We ran the numbers, and the amount we were getting paid, we couldn't—we would be—we would go negative if we would treat them as employees."). All Janitorial did not pay plaintiffs overtime, Social Security, or workers' compensation. Nor did it pay minimum wage. The plaintiffs made between $7.36 and $7.75 per hour during a time that the minimum wage in Washington went from $7.93 to $8.55 per hour.

Chaban acknowledged that the janitors began work no later than 11:00 p.m. each night and would often not be signed out by Fred Meyer employees, and thus not able to leave work, until after 8:00 a.m. the next morning. *Id.* at 1927. Thus, they regularly worked more than eight hours per night. According to plaintiffs' expert John Ezzo, it is common for such second-tier subcontractors to take the risk of misclassifying their employees and not meeting their legal obligations under minimum wage statutes "because they have relatively little to lose; they go out of business when their practices come to light." *Id.* at 1060.[4]

---

[3] Proceedings against Chaban have been stayed by bankruptcy proceedings.

[4] According to plaintiffs' expert John Ezzo, many businesses use second-tier contractors who recruit janitors, classify them as independent contractors, schedule them to work full shifts seven days a week, and do not comply with minimum wage laws. He testified that

The plaintiffs brought suit against the second-tier contractors, Fred Meyer Stores and Expert, for violation of the MWA, among other things. The plaintiffs contended that they were misclassified as independent contractors; that as a matter of economic reality, they were Expert's and Fred Meyer's employees; and that both companies knew the plaintiffs were misclassified and improperly denied overtime wages. They submitted evidence that such practices were in accord with a common business model where janitorial work is outsourced to a company that in turn contracts with second-tier contractors who provide the janitors. They also submitted evidence that second-tier contractors have been known to fail to abide by minimum wage statutes.

Fred Meyer and Expert moved for partial summary judgment arguing that they were not, as a matter of law, the plaintiffs' employers. The trial judge heard oral argument on both motions separately, starting with Expert's motion in May 2011 and Fred Meyer's motion in September of that year. In a later

---

this is sometimes referred to as the "Building One" model, based on the company that pioneered it in the late 1990s. *E.g.*, CP at 1063, 1073; Resp'ts' Suppl. Br. at 3. Building One went out of business "while it was being sued in a class action by janitors who claimed they were being misclassified and working long hours of overtime." CP at 1074. Ezzo testified that second-tier subcontractors can save "20% right away by classifying its janitors as independent contractors. It does so by not having to pay payroll taxes (Social Security, Medicare, FUTA [Federal Unemployment Tax Act, Internal Revenue Code ch. 23], Unemployment Insurance and other taxes), industrial insurance and by not paying overtime and/or minimum wages." *Id.* at 1076. Ezzo, himself a chief executive officer of a janitorial company, contended that these violations would not occur without the first-tier contractors "turning away from these problems." *Id.* at 1081. He submitted evidence that several suits for violation of minimum wage laws had been filed by advocates for janitors, including the United States Labor Department and Justice Department, and settled for millions of dollars. The petitioners challenged the admissibility of much of Ezzo's declarations and renew their objections in their supplemental briefs, but they did not assign error to the trial court's decision not to exclude it or designate it as an issue for review. We decline to consider whether the declarations were properly before the trial court without prejudice to a new proper objection before the trial court on remand.

written order that has not been challenged, the trial court found that the plaintiffs "were scheduled 7 nights a week, with the exception of Christmas Eve. The shift began no later than 11:00 p.m. and was supposed to end at 7:00 a.m., but regularly ran over." CP at 1927. At least in part, plaintiffs' shifts regularly ran over because they were not to leave until "Fred Meyer supervision signed off on their daily Work Order sheet." *Id.* The trial court also found that the plaintiffs were allowed to take a night off only if they could find their own replacement.

In the matter before us, the judge entered a brief written order dismissing the plaintiffs' joint employment claim against Expert "under the test set forth in *Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir.1983)."[5] CP at 1961. She later dismissed the plaintiffs' joint employer claims against Fred Meyer in a more detailed oral ruling. The parties proceeded to a bench trial on third-party beneficiary claims, which are not before us. The plaintiffs appealed only the summary judgment orders, and the Court of Appeals reversed. *Becerra Becerra v. Expert Janitorial, LLC*, 176 Wn. App. 694, 699-700, 309 P.3d 711 (2013).

Fred Meyer and Expert each petitioned for review. The Association of Washington Business, the National Federation of Independent Business, the National Federation of Independent Business Small Business Legal Center, the Washington Retail Association, and the International Franchise Association filed an amicus brief in support of the petition. We granted review. *Becerra*

---

[5] *Bonnette* was abrogated on other grounds by *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 539, 105 S. Ct. 1005, 83 L. Ed. 2d 1016 (1985).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Becerra v. Expert Janitorial*, 179 Wn.2d 1014, 318 P.3d 279 (2014). Centro de Ayuda Solidaria a los Amigos (CASA) Latina, the Faith Action Network, the Latina/o Bar Association of Washington, the National Employment Law Project, the Service Employees International Union Local 6, the Washington Employment Lawyers Association, and the Washington State Labor Council, AFL-CIO, have filed an amicus brief in support of the plaintiffs.

ANALYSIS

"Summary judgment entitles one party to judgment as a matter of law and is reviewed de novo." *Rivas v. Overlake Hosp. Med. Ctr.*, 164 Wn.2d 261, 266, 189 P.3d 753 (2008) (citing *Troxell v. Rainier Pub. Sch. Dist. No. 307*, 154 Wn.2d 345, 350, 111 P.3d 1173 (2005)). We view the evidence in the light most favorable to the nonmoving party, in this case, the plaintiffs. *Owen v. Burlington N. & Santa Fe R.R.*, 153 Wn.2d 780, 787, 108 P.3d 1220 (2005) (citing *Ruff v. King County*, 125 Wn.2d 697, 703, 887 P.2d 886 (1995)). In the joint employment context, summary judgment may be available even if the joint employment factors are split between finding and not finding the relationship exists. *Ling Nan Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 77 (2d Cir. 2003) ("[T]he Court need not decide that every factor weighs against joint employment." (emphasis omitted) (citing *Moreau v. Air France*, 343 F.3d 1179, 1188-89 (9th Cir. 2003))). However, "[b]ecause of the fact-intensive character of a determination of joint employment," the Second Circuit observed, "we rarely have occasion to review determinations made as a matter of law on an award of summary judgment." *Barfield v. N.Y. City Health &*

7

*Hosps. Corp.*, 537 F.3d 132, 143-44 (2d Cir. 2008) (citing *Zheng*, 355 F.3d at 76 n.13).

Our State's "MWA requires employers to pay their employees (as the act defines 'employees') overtime pay for the hours they work over 40 hours per week," subject to exceptions not raised here. *Bostain v. Food Express, Inc.*, 159 Wn.2d 700, 709, 153 P.3d 846 (2007) (citing RCW 49.46.130). "Employee" is broadly defined. "[U]nder the MWA, an employee includes any individual permitted to work by an employer. This is a broad definition." *Anfinson v. FedEx Ground Package Sys., Inc.*, 174 Wn.2d 851, 867, 281 P.3d 289 (2012) (citing *Stahl v. Delicor of Puget Sound, Inc.*, 148 Wn.2d 876, 884, 64 P.3d 10 (2003)).

The MWA is remedial in nature and is liberally construed. *Id.* at 870 (citing *Int'l Ass'n of Fire Fighters, Local 46 v. City of Everett*, 146 Wn.2d 29, 45, 42 P.3d 1265 (2002)). We look to the FLSA jurisprudence in interpreting our act. *Id.* at 868-69. The FLSA itself expansively defines "employ" as including "to suffer or permit to work." 29 U.S.C. § 203(g). Its definition of "employ" is far broader than that in common law and "encompasses 'working relationships, which prior to [the FLSA], were not deemed to fall within an employer-employee category.'" *Zheng*, 355 F.3d at 69 (alteration in original) (quoting *Walling v. Portland Terminal Co.*, 330 U.S. 148, 150-51, 67 S. Ct. 639, 91 L. Ed. 809 (1947)). The parties' characterization of their employment relationship is not determinative. *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 755 (9th Cir. 1979) (citing *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1315 (5th Cir. 1976)). Under FLSA regulations:

8

> if the facts establish that the employee is employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the Act. In this event, all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act, including the overtime provisions, with respect to the entire employment for the particular workweek.

29 C.F.R. § 791.2; *see also Torres-Lopez v. May*, 111 F.3d 633, 638 (9th Cir. 1997) (noting that "an employee may have more than one employer under the FLSA"). Over the years, federal courts have articulated many different factors that may be relevant to whether an entity is an employer or joint employer of a worker for the purposes of FLSA. *E.g.*, *Reyes*, 495 F.3d at 407; *Bonnette*, 704 F.2d at 1470, *abrogated on other grounds by Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 539, 105 S. Ct. 1005, 83 L. Ed. 2d 1016 (1985). *Bonnette* is one of the leading cases and held that the factors include, but are not limited to, "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" 704 F.2d at 1470 (quoting *Bonnette v. Cal. Health & Welfare Agency*, 525 F. Supp. 128, 135 (D.C. Cal. 1981)). In *Bonnette*, the Ninth Circuit found that home health workers were the employees of the State and local agencies given the four factors above and given the amount of economic control the state and local agencies had over the workers. *Id.*

9

While we have never specifically held that the "joint employer" doctrine is a viable theory under the MWA, Expert and Fred Meyer do not dispute that if they are found to be the joint employers of the plaintiffs, they are each responsible for compliance with the MWA. This accords with federal FLSA jurisprudence. *See* 29 C.F.R. § 791.2; *see also Torres-Lopez*, 111 F.3d at 638. Every employer, including a joint employer, has the same duties under the FLSA. *Reyes v. Remington Hybrid Seed Co.*, 495 F.3d 403, 408-09 (7th Cir. 2007).

The parties agree that we use an "economic reality" test to determine whether a joint employment relationship exists under minimum wage statutes.[6] We find the framework articulated by the Ninth Circuit in *Torres-Lopez*, 111 F.3d 633, to be the most helpful. There, the court articulated 13 nonexclusive factors, beginning with 5 formal or regulatory factors:

"(A) The nature and degree of control of the workers;

"(B) The degree of supervision, direct or indirect, of the work;

"(C) The power to determine the pay rates or the methods of payment of the workers;

"(D) The right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers; [and]

"(E) Preparation of payroll and the payment of wages."

---

[6] We note that we are not asked to review the subcontractor's characterization of the plaintiffs as independent contractors. Whether an employee is in fact an independent contractor is determined under a separate analysis. *See generally Anfinson*, 174 Wn.2d 851. The joint employment test we articulate today is designed to determine obligations under the minimum wage act and does not otherwise govern a worker's employment status or employer's obligations.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Id.* at 639-40 (alteration in original) (quoting 29 C.F.R. § 500.20(h)(4)(ii)). The court also articulated 8 common law (sometimes called "functional") factors:

> (1) whether the work was a "specialty job on the production line," *Rutherford* [*Food Corp. v. McComb*], 331 U.S. [722,] 730, 67 S. Ct. [1473, 91 L. Ed. 1772 (1947)];
>
> (2) whether responsibility under the contracts between a labor contractor and an employer pass from one labor contractor to another without "material changes," *id.*;
>
> (3) whether the "premises and equipment" of the employer are used for the work, *id.*; *see also Real*, 603 F.2d at 754 (considering the alleged employee's "investment in equipment or materials required for his task, or his employment of helpers");
>
> (4) whether the employees had a "business organization that could or did shift as a unit from one [worksite] to another," *Rutherford*, 331 U.S. at 730 . . . ;
>
> (5) whether the work was "piecework" and not work that required "initiative, judgment or foresight," *id.*; *see also Real*, 603 F.2d at 754 (considering "whether the service rendered requires a special skill");
>
> (6) whether the employee had an "opportunity for profit or loss depending upon [the alleged employee's] managerial skill," *Real*, 603 F.2d at 754;
>
> (7) whether there was "permanence [in] the working relationship," *id.*; and
>
> (8) whether "the service rendered is an integral part of the alleged employer's business," *id.*

*Id.* at 640 (some alterations in original); *see also Moreau v. Air France*, 356 F.3d 942, 950 (9th Cir. 2003). Applying these factors in *Torres-Lopez*, the Ninth Circuit concluded that farmworkers harvesting cucumbers were jointly

11

*Becerra v. Expert, et al.* (89534-1)

employed by the farming partnership that operated the farm and not just the labor contractor that recruited them and thus the partnership was liable under FLSA. 111 F.3d at 644.

These factors are not exclusive and are not to be applied mechanically or in a particular order. As the United States Supreme Court noted long ago, "[T]he determination of the relationship does not depend on such isolated factors but rather upon the circumstances of the whole activity." *Rutherford,* 331 U.S. at 730; *see also Zheng,* 355 F.3d at 71-72 ("The court is also free to consider any other factors it deems relevant to its assessment of the economic realities."). Indeed, as the inimitable Judge Easterbrook observed, the economic reality test "offers a way to think about the subject and not an algorithm. That's why toting up a score is not enough." *Reyes,* 495 F.3d at 408. Here, our Court of Appeals properly found that these factors may include whether the putative joint employer knew of the wage and hour violation, whether it paid sufficient amounts to the subcontractors to allow for a lawful wage, and whether the subcontracting arrangement is a "'subterfuge or sham.'" 176 Wn. App. at 719 (quoting *Barfield v. N.Y. City Health & Hosps. Corp.,* 537 F.3d 132, 145-46 (2d Cir. 2008)).

### 1. EXPERT

The trial judge articulated only the four *Bonnette* factors in dismissing the employee's joint employer theory against Expert:

> There is no genuine issue of material fact on the issue of whether Expert was Plaintiffs' joint employer, and the Defendant is entitled to judgment as a matter of law. Specifically, the Court concludes that Expert was not Plaintiffs' joint employer under the test set forth in *Bonnette v.*

12

*California Health and Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983). Expert was not involved in hiring or firing the plaintiffs, did not supervise their work schedules or conditions of employment, was not involved in determining the plaintiffs' rate of pay and did not maintain their employment records. Plaintiffs admit that nobody from Expert ever told them what to do or how to do their jobs. In fact, the plaintiffs could not even identify any employees who worked for Expert.

CP at 1961. Later, in the context of ruling on Fred Meyer's summary judgment motion, the judge noted that she had limited her analysis in Expert's motion to the *Bonnette* factors on the theory that the nonregulatory factors "seem to apply more to the Boeing[7] case and that type of thing. The production line is one of the things they talk about. And also they seem to find more where the plaintiff's work is an integral part of business." Report of Proceedings (Sept. 2, 2011) at 36. The Court of Appeals reversed, concluding that the trial court had erred in limiting its analysis to the *Bonnette* factors, that many factors did weigh in favor of finding Expert was a joint employer, and that material questions of fact remained to be resolved. *Becerra Becerra*, 176 Wn. App. at 712-13, 723. We agree.

Simply put, we find the trial court did not consider all the relevant factors at summary judgment or sufficiently identify why it deemed certain factors to be not relevant. While our review of the record suggests that summary judgment was improperly granted on the merits, we do not mean to bind the trial court's hands on remand. We remand for further proceedings,

---

[7] It is not clear what case the trial judge is referring to or if the court reporter misheard her. No case named *Boeing* was cited in the summary judgment briefing, raised on oral argument on the motion, or appears in FLSA joint employment case law. We note that Expert urges us to find that the trial court did consider more factors than those she listed, but our review of the record persuades us otherwise.

13

including further discovery by the parties if they deem it necessary, and direct the trial court to consider any otherwise proper summary judgment motions brought by the parties raising the joint employment matter again.

## 2. FRED MEYER

The trial judge's written ruling granting Fred Meyer's summary judgment did not identify any of the factors she considered. In her oral ruling, she effectively found that four factors, some formal and some functional, weighed in favor of finding Fred Meyer was not the joint employer of the janitors. Again, we believe it is unlikely summary judgment should have been granted on this record, but we leave it in the able hands of the trial court to reconsider the matter using the *Torres-Lopez* factors on remand.

## CONCLUSION

We affirm the Court of Appeals and remand for further proceedings on whether Fred Meyer and Expert functioned as joint employers of the janitors under Washington's MWA.

*Becerra v. Expert, et al.* (89534-1)

González, J.

WE CONCUR:

Madsen, C.J.

Stephens, J

Wiggins, J

Owens, J

Gordon McCloud, J.

Fairhurst, J.

Yu, J

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.