# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| RYAN ROCHA, NICOLE BEDNARCZYK, and CATHERINE SELIN, individually and on behalf of all others similarly situated, | No. 51823-6-II |
| Appellants, | |
| v. | |
| KING COUNTY, a municipal corporation, | PUBLISHED OPINION |
| Respondent. | |

Lee, A.C.J. — Nicole Bednarczyk and Catherine Selin appeal the superior court's order granting King County's motion for summary judgment and dismissing their disparate impact claim based on economic status and a claim for minimum wage related to jury service in King County. We affirm.

## FACTS

Bednarczyk and Selin (collectively the Appellants) were both summoned for jury duty in King County. Selin served 11 days of jury duty. Bednarczyk obtained a letter from her employer explaining that Bednarczyk would not be able to work or be paid during her jury service and that jury service would create a hardship for both Bednarczyk and her employer. Bednarczyk requested an economic hardship excusal from the court. The court granted Bednarczyk's request.

No. 51823-6-II

The Appellants filed a complaint against King County, alleging that King County's jury pay disparately excluded jurors from service based on economic status and that jurors were entitled to be paid minimum wage for their service.[1] The Appellants also sought a declaratory judgment ruling that (1) King County's current jury compensation was causing jurors to be disparately excluded based on economic status and (2) King County was violating wage and hour laws by failing to pay jurors minimum wage.[2]

King County filed a motion for summary judgment, arguing that it was entitled to judgment as a matter of law on the disparate impact and wage claims and that the Appellants did not have standing for their declaratory judgment action. The superior court granted King County's motion for summary judgment and dismissed the Appellants' disparate impact and wage claims. The superior court did not specifically address the Appellants' standing to bring their declaratory judgment actions.

The Appellants appeal the superior court's order granting summary judgment and dismissing their disparate impact and minimum wage claims.

---

[1] The appellants filed a class action complaint against King County. However, no classes were certified in this case.

[2] Ryan Rocha also filed additional claims based on racial discrimination under the Washington Law Against Discrimination. Appellants assert that Rocha has moved to Florida and his claims have been voluntarily dismissed. There is no record of a voluntary dismissal in the record before this court. However, because the Appellants do not make any arguments in support of Rocha's claims based racial discrimination, we do not address them. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

No. 51823-6-II

ANALYSIS

A. LEGAL PRINCIPLES

We review the superior court's order granting summary judgment de novo. *Bavand v. OneWest Bank*, 196 Wn. App. 813, 825, 385 P.3d 233 (2016). Summary judgment is appropriate when the pleadings, affidavits, depositions, and admissions on file show the absence of any genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. CR 56(c). We may affirm the superior court's order granting summary judgment "on any basis supported by the record." *Bavand*, 196 Wn. App. at 825.

B. DISPARATE IMPACT

The Appellants argue that the superior court erred by granting summary judgment in favor of King County on the disparate impact claim because RCW 2.36.080(3) allows for a disparate impact claim based on economic status. We hold that the superior court properly granted summary judgment on the Appellants' disparate impact claim.

1. Disparate Impact Claim Based on Economic Status

There are two types of disparate impact claims: disparate impact under the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW, and disparate impact under constitutional equal protection principles. The Appellants may not bring a disparate impact claim under the WLAD because the WLAD does not include economic status as a protected class for the purposes of WLAD claims, and the Appellants did not bring an equal protection claim.

Economic status is not recognized as a protected class under the WLAD. RCW 49.60.030(1). WLAD only protects the "right to be free from discrimination because of race, creed, color, national origin, sex, honorably discharged veteran or military status, sexual

3

orientation, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability." RCW 49.60.030(1). Protection from discrimination based on economic status is not enumerated in the WLAD. Therefore, as a matter of law, Appellants cannot bring a disparate impact claim based on economic status under the WLAD.

Disparate impact claims may be brought under the equal protection clauses of the Fourteenth Amendment to the United States Constitution and article I, section 12 of the Washington Constitution. *State v. Johnson*, 194 Wn. App. 304, 307-08, 374 P.3d 1206 (2016). The Appellants did not plead a disparate impact claim under the equal protection clause in the superior court nor do they argue a constitutional disparate impact claim on appeal. Instead, the Appellants merely cite to a voting case addressing a constitutional equal protection claim. Therefore, we decline to address whether the Appellants established a constitutional disparate impact claim. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Thus, as a matter of law, the Appellants have failed to show they can bring a disparate impact claim based on economic status under the WLAD or as an equal protection claim.

2.     Implied Disparate Impact Cause of Action under RCW 2.36.080(3)

Appellants argue that the amount jurors are paid under the jury pay statute (RCW 2.36.150)[3] creates a disparate impact based on economic status and violates the no juror exclusion

---

[3] Jurors are not entitled to compensation for their service. *State ex rel. Hastie v. Lamping*, 25 Wash. 278, 282, 65 P. 537 (1901). Instead, jurors are entitled only to what compensation is granted to them by statute. *Id.*. The legislature has established an amount jurors may be paid under RCW 2.36.150, which states:

statute (RCW 2.36.080(3)).  But Appellants did not bring a disparate impact claim  under the juror

pay statute.  Instead, Appellants' disparate impact claim seems to be rooted in the no juror

exclusion statute.

The underlying premise of the Appellants' argument is that the amount jurors are paid

causes jurors of lower economic status to not be able to serve, and, therefore, the amount jurors

are paid has a disparate impact on people of lower economic status.  This premise is not disputed.

But this premise does not give rise to an implied disparate impact claim under RCW 2.36.080(3).

RCW 2.36.080(3) provides, "A citizen shall not be excluded from jury service in this state

on account of . . . economic status."  However, RCW 2.36.080 does not provide a remedy for

alleged violations of this provision.  Therefore, the Appellants must show that RCW 2.36.080(3)

creates an implied cause of action under the test set out by the Supreme Court in *Bennett v. Hardy*,

113 Wn.2d 912, 784 P.2d 1258 (1990).

---

Jurors shall receive for each day's attendance, besides mileage at the rate determined under RCW 43.03.060, the following expense payments:
(1) Grand jurors may receive up to twenty-five dollars but in no case less than ten dollars;
(2) Petit jurors may receive up to twenty-five dollars but in no case less than ten dollars;
(3) Coroner's jurors may receive up to twenty-five dollars but in no case less than ten dollars;
(4) District court jurors may receive up to twenty-five dollars but in no case less than ten dollars.

RCW 2.36.150 applies to grand and petit juries empaneled in superior courts.  RCW 2.36.010(5), (6).

No. 51823-6-II

A cause of action may be implied when a statute "provides protection to a specified class of persons but creates no remedy." *Bennett*, 113 Wn.2d at 920. To determine if an implied cause of action exists, we engage in a three-part inquiry,

> first, whether the plaintiff is within the class for whose "especial" benefit the statute was enacted; second, whether legislative intent, explicitly or implicitly, supports creating or denying a remedy; and third, whether implying a remedy is consistent with the underlying purpose of the legislation.

*Id.* at 920-21.

With regard to the first part of the inquiry, the plain language of the statute protects people from being excluded from jury service based on economic status. Therefore, the plaintiffs would be within the class for whose benefit RCW 2.36.080(3) was enacted. Accordingly, the first part of the *Bennett* inquiry is satisfied.

As to the second part of the inquiry, the legislative intent expressed in RCW 2.36.080(1) and RCW 2.36.080(2) shows that implying a remedy based on juror pay is not consistent with legislative intent. RCW 2.36.080(1) protects the opportunity and obligation for jury service:

> It is the policy of this state that all persons selected for jury service be selected at random from a fair cross section of the population of the area served by the court, and that all qualified citizens *have the opportunity . . . to be considered for jury service* in this state and *have an obligation to serve as jurors when summoned* for that purpose.

(emphasis added). RCW 2.36.080(1) demonstrates that the legislature intended to protect the opportunity to be considered for jury service and to impose the obligation to serve as a juror when summoned, not guarantee the right to actually serve on a jury when summoned.

6

And RCW 2.36.080(2) specifically expresses the legislature's intent to minimize the burden of jury service—notably without reference to financial considerations. RCW 2.36.080(2) provides,

> It is the policy of this state to maximize the availability of residents of the state for jury service. It also is the policy of this state to minimize the burden on the prospective jurors, their families, and employers resulting from jury service. The jury term and jury service should be set at as brief an interval as is practical given the size of the jury source list for the judicial district. The optimal jury term is one week or less. Optimal jury service is one day or one trial, whichever is longer.

RCW 2.36.080(2) demonstrates the legislature's intent to minimize the burden to jurors by limiting the length of jury service, not by focusing on compensating jurors for potential financial burdens.

Read together, the legislature's intent is to ensure that state residents have the opportunity to be considered for jury service, that state residents have an obligation to serve as a juror when summoned, and that any burden is minimized by limiting the amount of time that must be spent in jury service. The legislature did not intend to guarantee jurors be able to serve by providing adequate financial compensation. Therefore, it would be inconsistent with the legislative intent to imply a remedy based on jurors' financial compensation for alleged violations of RCW 2.36.080(3). The second part of the *Bennett* inquiry is not satisfied.

As to the third part of the inquiry under *Bennett*, the underlying purpose of the legislation relied on by Appellants is to ensure that state residents have the opportunity to be considered for jury service and the obligation to serve when summoned for jury service. The implied cause of action and remedy sought here—increase in juror pay—is not consistent with the underlying purpose of RCW 2.36.080(3). It is undisputed that the Appellants were included in the master jury

pool and continue to be eligible to be summoned for jury service. Therefore, the third part of the *Bennett* inquiry is not satisfied.

Because an implied cause of action and remedy of increased juror pay is not consistent with the legislative intent or the underlying purpose of the statute, the Appellants have failed to demonstrate that RCW 2.36.080(3) creates an implied disparate impact cause of action based on jury pay. Moreover, RCW 2.36.080(3) prohibits conduct that excludes persons from the opportunity to be considered for jury service based on economic status. Therefore, even if RCW 2.36.080(3) allows for an implied cause of action, which we hold it does not, the Appellants must establish some conduct by King County that excluded them from the opportunity to be considered for jury service based on their economic status.

Here, the Appellants assert that King County's jury pay caused them to ask for an economic hardship excusal, which the court granted. But economic hardship excusals are not exclusions for the purpose of the protections provided by RCW 2.36.080(3). As discussed above, RCW 2.36.080(1) clarifies that the legislature intended to protect the opportunity for people to be considered for jury service and to impose the obligation to serve as a juror when summoned. It is undisputed that the Appellants were, and continue to be, included in the master jury list, and, therefore, the Appellants continue to have the opportunity to be considered for jury service.[4] Because economic hardship excusals do not prevent potential jurors from being summonsed for

---

[4] In fact, Selin actually served on a jury and Bednarczyk did not serve on any jury because she requested that the court excuse her from jury service.

jury duty or from being included in the master jury list, they are not exclusions for the purposes of RCW 2.36.080(3).[5]

Therefore, King County was entitled to judgment as a matter of law and the superior court properly granted King County's motion for summary judgment dismissing the Appellants' disparate impact claim.

C.       MINIMUM WAGE

The Appellants also argue that the superior court erred by granting summary judgment on their claim that King County violated the Washington Minimum Wage Act (MWA), chapter 49.46 RCW.  We disagree.

The MWA requires employers to pay certain minimum amounts of compensation to their employees.  RCW 49.46.020.  An " '[e]mployee' includes any individual employed by an employer."  RCW 49.46.010(3).  And " '[e]mploy' includes to permit to work."  RCW 49.46.010(2).  "Taken together, these statutes establish that, under the MWA, an employee includes any individual permitted to work by an employer." *Afinson v. FedEx Ground Package Sys. Inc.*, 174 Wn.2d 851, 867, 281 P.3d 289 (2012).

Our Supreme Court has held that the MWA definition of employee incorporates the economic-dependence test to determine whether a worker is an employee. *Id.* at 871.  Under the

---

[5] We note that, even if we accepted the Appellants premise that economic hardship excusals should be characterized as exclusions that violate RCW 2.36.080(3), the appropriate remedy would be to prohibit economic hardship excusals—it would not be to increase the rate of juror pay.  But prohibiting the superior court from exercising its discretion to grant economic hardship excusals is not consistent with legislative intent or sound policy. *See* RCW 2.36.100(1) (allowing persons to be excused from jury service based on "undue hardship, extreme inconvenience, public necessity, or any reason deemed sufficient by the court.").

economic-dependence (also referred to as the economic realities) test, the "relevant inquiry is 'whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself.'" *Id.* (quoting *Hopkins v. Cornerstone America*, 545 F.3d 338, 343 ( 5th Cir. 2008), *cert. denied*, 556 U.S. 1129 (2009)). Although there are 13 nonexclusive factors[6] that are considered when applying the economic-dependence test, " '[t]he determination of the relationship does not depend on such isolated factors but rather upon the circumstances of the whole activity.' " *Becerra Becerra v. Expert Janitorial, LLC*, 181 Wn.2d 186, 198, 332 P.3d 415 (2014) (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730, 67 S. Ct. 1473, 91 L. Ed. 1772 (1947)) (alteration in original).

Here, the Appellants focus on the degree of control the King County exercises over jurors during jury service, as well as other specific aspects of jury service. However, the Appellants fail to address the fundamental nature of jury service.

Jury service is service performed as a civic duty. *Thiel v. Southern Pac. Co.*, 328 U.S. 217, 224, 66 S. Ct. 984, 90 L. Ed. 1181 (1946) ("Jury service is a duty as well as a privilege of

---

[6] The 13 nonexclusive factors are: (1) the nature and degree of control of the workers; (2) the degree of supervision, direct or indirect, of the work; (3) the power to determine the pay rates or the methods of payment of the workers; (4) the right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers; (5) preparation of payroll and the payment of wages; (6) whether the work was a specialty job; (7) whether responsibility under the contracts between a labor contractor and an employer pass from one labor contractor to another without material changes; (8) whether the premises and equipment of the employer are used for the work; (9) whether the employees have a business organization that shifts as a unit from one worksite to another; (10) whether the work was piecework and not work that required initiative, judgment, or foresight; (11) whether the employee's opportunity for profit or loss resulted from the employee's managerial skills; (12) whether there was permanence in the working relationship; and (13) whether the service rendered is an integral part of the employer's business. *Becerra Becerra v. Expert Janitorial, LLC*, 181 Wn.2d 186, 196-97 332 P.3d 415 (2014).

citizenship; it is a duty that cannot be shirked on a plea of inconvenience or decreased earning power."). As such, jurors are not entitled to compensation for their service. *State ex rel. Hastie v. Lamping*, 25 Wash. 278. 282, 65 P. 537 (1901). Instead, jurors are entitled only to what compensation is granted to them by statute. *Id.*. The MWA definition of employee, even considering the economic-dependence test, does not transform the fundamental nature of jury service as a civic duty. Thus, jurors are not employees under the MWA.

The Appellants also rely on the holding in *Bolin v. Kitsap County*, 114 Wn.2d 70, 785 P.2d 805 (1990), which established jurors as employees for the purposes of worker's compensation under the Industrial Insurance Act (IIA), Title 51 RCW. However, *Bolin* interpreted the status of jurors as employees under the IIA, not the MWA, and is inapplicable.

In *Bolin*, the holding that jurors are covered under the IIA as employees was based primarily on the fact that the IIA did not exclude jury service from the act. *Bolin*, 114 Wn.2d at 72. The *Bolin* court explained,

> The liberality of Washington's worker's compensation statute forces the conclusion that jury service is employment under the act.
>
> . . . .
>
> Unlike many states which list or define employments *included*, our act lists only employments *excluded*. *See* RCW 51.12.020. Jury service is not within the list of those employments excluded.

*Id*. The *Bolin* court did not apply the economic-dependence test to determine whether jurors were employees under the IIA. Because *Bolin* addressed the treatment of jurors under the IIA and did not apply the economic-dependence test, its holding does not determine whether jurors are employees under the MWA.

Because jurors are not employees under the MWA, King County was entitled to judgment as a matter of law. Therefore, the superior court properly granted summary judgment dismissing Appellants' MWA claim.

D.     STANDING UNDER THE DECLARATORY JUDGMENT ACT

King County argues that the Appellants do not have standing to seek declaratory judgment. . We agree.

To establish standing under the declaratory judgment act, chapter. 7.24 RCW, the plaintiff must meet a two part test. *Grant Cy. Fire Prot. Dist. No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 802, 83 P.3d 419 (2004). First, the plaintiff's interest must be within the zone of interest protected by the statute in question. *Id*. Second, the plaintiff must show an injury in fact resulting from the challenged action. *Id*.

The Appellants are seeking a declaratory judgment under both RCW 2.36.080(3) and the MWA. The Appellants lack standing to seek declaratory judgment under both statutes.

Here, it is undisputed that the Appellants are on the master jury service list and may be summoned for jury duty. If they are selected to serve, they will be paid the statutory jury service fee. However, if they seek to be excused from jury duty due to economic hardship, they will have been excused from jury service due to their request, not because of King County's actions. Thus, Appellants cannot show injury in fact resulting from King County's actions.

And, as explained above, jury service is not employment and jurors are not employees for the purposes of the MWA. Therefore, the Appellants' interests are not within the zone of interests protected by the MWA.

Accordingly, we hold that the Appellants lack standing to seek a declaratory judgment.

No. 51823-6-II

CONCLUSION

Appellants' disparate impact claim based on economic status under RCW 2.36.080(3) fails. Because jury service is a civic duty and not employment, jurors are not employees under the MWA, and Appellant's MWA claim fails as well. Also, Appellants lack standing to seek a declaratory judgment under both RCW 2.36.080(3) and the MWA. Therefore, we affirm the superior court's order dismissing Appellants' claims.

Lee, A.C.J.

I concur:

Sutton, J.

13

No. 51823-6-II

BJORGEN, J.P.T.* (dissenting) — However characterized, the only remuneration King County affords for jury service is $10 a day in per diem plus reimbursement for mileage or travel costs. Neither King County nor the majority opinion dispute that such a low amount makes jury service a hardship for citizens of lower means, creating the need on the part of many to request they be excused from service. According to the evidence summarized in the appellant's amended brief, at pages 5-6, many such requests are granted. Neither the County nor the majority opinion dispute that the lower a citizen's income, the greater the economic hardship caused by these low rates. Neither dispute that the lower a citizen's income, the greater the incentive to self-exclusion from jury service to avoid that economic hardship. Neither dispute that this hardship and this incentive to exclusion fall more heavily on those of little means than on those of greater.

In my view, this catalyst to self-exclusion violates the mandate of RCW 2.36.080(3), which states:

> A citizen shall not be excluded from jury service in this state on account of . . . economic status.

Therefore, I dissent.

## I. THE NATURE OF JURY SERVICE

Jury service is one of the adornments of citizenship. It

> affords ordinary citizens a valuable opportunity to participate in a process of government, an experience fostering, one hopes, a respect for law. *Duncan* [*v. Louisiana*,] 391 U.S. [145,] 187, 88 S. Ct. [1444, 20 L. Ed. 2d 491 (1968)] (Harlan, J., dissenting). Indeed, with the exception of voting, for most citizens the honor and privilege of jury duty is their most significant opportunity to participate in the democratic process.

---

* Judge Bjorgen is serving as a judge pro tempore for the Court of Appeals, pursuant to RCW 2.06.150.

14

*Powers v. Ohio*, 499 U.S. 400, 407, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991) (internal

quotation marks omitted).  As such,

> [t]he opportunity for ordinary citizens to participate in the administration of justice
> has long been recognized as one of the principal justifications for retaining the jury
> system.

*Id*. at 406.

> The jury system, in the words of the high court,

> "postulates a conscious duty of participation in the machinery of justice. . . .  One
> of its greatest benefits is in the security it gives the people that they, as jurors actual
> or possible, being part of the judicial system of the country can prevent its arbitrary
> use or abuse."

*Id.* (alteration in original) (quoting *Balzac v. Porto Rico*, 258 U.S. 298, 310, 42 S. Ct. 343, 66 L.

Ed. 627 (1922)).  The Court turned also to Alexis de Tocqueville for words to match the gravity

of its point:

> The jury . . . invests each citizen with a kind of magistracy; it makes them all feel
> the duties which they are bound to discharge towards society; and the part which
> they take in the Government.  By obliging men to turn their attention to affairs
> which are not exclusively their own, it rubs off that individual egotism which is the
> rust of society.

*Powers*, 499 U.S. at 407 (alteration in original).  Our state Supreme Court subscribes to this view

with equal vigor, stating, "We have juries for many reasons, not the least of which is that it is a

ground level exercise of democratic values."  *State v. Saintcalle*, 178 Wn.2d 34, 50, 309 P.3d 326

(2013).

Befitting the luster of these values, the Supreme Court has left no doubt as to the damage

left by their decline.  In *Peters v. Kiff*, the Court held:

> When any large and identifiable segment of the community is excluded from jury
> service, the effect is to remove from the jury room qualities of human nature and

15

No. 51823-6-II

varieties of human experience, the range of which is unknown and perhaps unknowable.

407 U.S. 493, 503, 92 S. Ct. 2163, 33 L. Ed.2d 83 (1972).  More specifically, the Court has held

that

> The systematic and intentional exclusion of women, like the exclusion of a racial group, *Smith v. Texas*, 311 U.S. 128, 61 S. Ct. 164, 85 L. Ed. 84 [(1940)], or an economic or social class, *Thiel v. Southern Pacific Co.*, [328 U.S. 217, 66 S. Ct. 984, 90 L. Ed. 1181 (1946)], deprives the jury system of the broad base it was designed by Congress to have in our democratic society. . . . As well stated in *United States v. Roemig*, 52 F.Supp. 857, 862[ (N.D. Iowa 1943)], "Such action is operative to destroy the basic democracy and classlessness of jury personnel." . . . The injury is not limited to the defendant—there is injury to the jury system, to the law as an institution, to the community at large, and to the democratic ideal reflected in the processes of our courts.

*Ballard v. United States*, 329 U.S. 187, 195, 67 S. Ct. 261, 91 L. Ed. 181 (1946).

The evils of excluding lower income citizens from jury service were specifically recognized in *Thiel*, 328 U.S. at 222.  The trial court's exclusion of daily wage earners from the jury lists, the Court held,

> would encour[a]ge whatever desires those responsible for the selection of jury panels may have to discriminate against persons of low economic and social status.  We would breathe life into any latent tendencies to establish the jury as the instrument of the economically and socially privileged.  That we refuse to do.

*Thiel*, 328 U.S. at 223-24.

Through its perverse incentive to those of low income to excuse themselves from jury service, the low rates paid by King County surrender this civic capital to the short-term dictates of the balance sheet.

16

II. THE MINUSCULE REMUNERATION FOR JURY SERVICE AFFORDED BY KING COUNTY EXCLUDES CITIZENS FROM JURY SERVICE ON ACCOUNT OF ECONOMIC STATUS

Neither the County nor the majority opinion dispute that the low levels of juror remuneration impose an economic hardship on low income citizens that leads many to exclude themselves from jury service. Instead, the positions of the County and the majority rest on legal arguments that this incentive to self-exclusion does not violate RCW 2.36.080(3) or, if it did, that those excluded have no right of action to vindicate their rights. This Part II address the first of these arguments. The right of action is discussed in Part III.

A.     Compliance with the Expense Reimbursement Levels Authorized by RCW 2.36.150 Does Not Save Violations of RCW 2.36.080(3)

The County argues that RCW 2.36.150(2) unambiguously sets juror pay at $10 to $25 per day and that RCW 2.36.080(3) must be read not to require anything greater than that.

The flaw in this argument is that RCW 2.36.150 expressly deals only with "expense payments." In fact, through Laws of 2004, chapter 207, the legislature amended the statute's prior reference to "compensation" to read "expense payment," showing that the intent behind RCW 2.36.150 is not to cap all types of compensation or payment, but simply to confine reimbursement for expenses. This cap on expense payments in no way licenses the effective exclusion of low income citizens from jury service through the absence of other reasonable compensation.

The County and the majority counter with the holding in *State ex rel. Hastie v. Lamping*, 25 Wn. 278, 282, 65 P. 537 (1901), that juror compensation is prescribed by statute. This 1901 decision, however, is robbed of any precedential value by the fact that the prohibition of

17

exclusion on account of economic status of RCW 2.36.080(3) was not then in effect. In fact, that

prohibition was not enacted until 1979. *See* LAWS OF 1979, ch. 135, § 2.

We read statutory provisions together in order to determine legislative intent. *In re*

*Estate of Kerr*, 134 Wn.2d 328, 336, 949 P.2d 810 (1998). We do so in order to

> determine the legislative intent underlying the entire statutory scheme and read the provisions "as constituting a unified whole, to the end that a harmonious, total statutory scheme evolves which maintains the integrity of the respective statutes."

*Id.* (quoting *State v. Williams*, 94 Wn.2d 531, 547, 617 P.2d 1012 (1980)).

RCW 2.36.150 establishes the range of expense reimbursement afforded jurors. RCW

2.36.080(3) prohibits excluding jurors on account of economic status. These two provisions are

most easily harmonized by reading each by their plain language: the former caps the

reimbursement of expenses and the latter prohibits the effective exclusion of citizens on account

of low income or assets. Where, as here, exclusion is caused by the absence of any

compensation beyond the allowed expense reimbursement, the cap on expenses does not

somehow take the prohibition of exclusion out of effect. Each can be given full effect by

requiring reasonable compensation beyond the reimbursement of expenses.

B.     The Low Rates of Remuneration Effectively and Directly Exclude Low-Income Citizens from Jury Service.

The County argues that there can be no exclusion under RCW 2.36.080(3), because the

economically distressed jurors asked to be excused.

The law is meant to apply to human conduct, not in a linguistic vacuum removed from

the realities of that conduct. As Justice Holmes said, "The life of the law has not been logic: it

has been experience." Oliver Wendell Holmes, THE COMMON LAW 1 (1881). Jury service is a

full time job that can extend from less than a day to weeks. For those with low paying jobs without leave for this purpose, the cost of jury service may be a missed rent payment or skipped meals. For those without understanding employers, jury service may come at the cost of a job. Faced with such risk, the choice to exclude oneself is hardly voluntary.

The source of these Hobson's choices, it must be stressed, is the choice by the County to afford such negligible remuneration for jury service. That structural element of the justice system, the absence of compensation beyond the allowed reimbursement for expenses, makes jury service untenable for many lower income citizens. To say that one voluntarily excludes oneself by declining jury service instead of risking, say, eviction or loan default, is to search the law with blinders. The lack of reasonable compensation compels their self-exclusion from this high privilege of citizenship. The justice system itself excludes many low income citizens on account of economic status in violation of RCW 2.36.080(3).

### III. THE LAW IMPLIES A CAUSE OF ACTION TO ENFORCE THE RIGHT ESTABLISHED BY RCW 2.36.080(3) NOT TO BE EXCLUDED FROM JURY SERVICE ON ACCOUNT OF ECONOMIC STATUS

It seems odd even to ask whether one deprived of a central right of citizenship guaranteed by statute may enforce that right in the courts. We presume, after all, that the legislature does not intend to engage in futile actions. *See Davis v. Wash. Toll Bridge Auth.*, 57 Wn.2d 428, 439, 357 P.2d 710 (1960). Further, "[c]ourts have consistently held that when a statute gives a new right and no specific remedy, the common law will provide a remedy." *State ex rel. Phillips v. Wash. State Liquor Control Bd.*, 59 Wn.2d 565, 570, 369 P.2d 844 (1962). These considerations should demand that courts heavily favor the presence of an implied cause of action in any inquiry into whether one exists.

The case law prescribes a three-part inquiry to determine if an implied cause of action exists:

> [F]irst, whether the plaintiff is within the class for whose "especial" benefit the statute was enacted; second, whether legislative intent, explicitly or implicitly, supports creating or denying a remedy; and third, whether implying a remedy is consistent with the underlying purpose of the legislation.

*Bennett v. Hardy*, 113 Wn.2d 912, 920-21, 784 P.2d 1258 (1990) (quoting *In re WPPSS Sec. Litig.*, 823 F.2d 1349, 1353 (9th Cir. 1987)).

Turning to the first consideration in *Bennett*, the County argues that "[t]here is no indication" that RCW 2.36.080(3) was intended to confer an especial benefit on jurors. Br. of Resp't at 13. Rather, the County urges, it is more likely the statute was intended to benefit litigants.

This argument is belied by the expressly stated policy behind RCW 2.36.080(3):

> It is the policy of this state that all persons selected for jury service be selected at random from a fair cross section of the population of the area served by the court, and that all qualified citizens have the opportunity . . . to be considered for jury service in this state and have an obligation to serve as jurors when summoned for that purpose.

RCW 2.36.080(1) (citation omitted). The second clause of this provision expresses the legislative design that "all qualified citizens" are to have the opportunity for jury service. Qualified, prospective jurors, therefore, are within the class for whose especial benefit RCW 2.36.080(3) was enacted. The majority is correct in concluding that the first element of the *Bennett* inquiry is satisfied.

The second *Bennett* inquiry is "whether legislative intent, explicitly or implicitly, supports creating or denying a remedy." *Bennett*, 113 Wn.2d at 920. The majority concludes this inquiry is not satisfied for a number of reasons.

First, the majority argues that RCW 2.36.080(2) demonstrates that the legislature's intent in adopting RCW 2.36.080(3) is to minimize the burden to jurors by limiting the length of jury service, not by focusing on compensating jurors for potential financial burdens. The minimization of juror burdens from long trials, though, is not the only purpose of RCW 2.36.080(3) expressly identified by the legislature. As already noted, RCW 2.36.080(1) observes the core policy of ensuring that all qualified citizens have the opportunity for jury service. More to the point, RCW 2.36.080(2) expressly identifies a policy other than minimization of burden. It states:

> It is the policy of this state to maximize the availability of residents of the state for jury service. It also is the policy of this state to minimize the burden on the prospective jurors, their families, and employers resulting from jury service. The jury term and jury service should be set at as brief an interval as is practical given the size of the jury source list for the judicial district. The optimal jury term is one week or less. Optimal jury service is one day or one trial, whichever is longer.

Thus, just before "also" noting the policy of minimizing the burden, the legislature expressly identified the policy of maximizing the availability of residents of the state for jury service. This policy comprehends much more than concern about the length of trials. It, along with the policy of ensuring all qualified citizens the opportunity to serve, is directly served by the prohibition of exclusion on account of economic status found in RCW 2.36.080(3).

Second, the majority contends the second *Bennett* consideration is not satisfied because the legislature intended to protect the opportunity to be considered for jury

service, rather than guarantee the right to actually serve on a jury when summoned. The majority would thus conclude that RCW 2.36.080(3) is met as long as the individual is summoned for jury service, even though financial straits would prevent actual service. In support, the majority draws on the statement of policy in RCW 2.36.080(1) that "all qualified citizens *have the opportunity* . . . to be considered for jury service." (Emphasis added.)

This contention fails for several reasons. To begin with, the appellants are not demanding a guarantee that they will actually serve on a jury. They ask, rather, that they have the same opportunity to serve as those for whom service does not pose an economic threat.

My principal disagreement, though, lies in the meaning of the phrase "opportunity to be considered" in RCW 2.36.080(1). The key language, again, is "have the opportunity . . . to be considered for jury service." If this policy is met simply by summoning potential jurors without regard to economic status, then a subsequent express, de jure exclusion on account of poverty from actually serving on a jury would not violate RCW 2.36.080(3). That, of course, would bluntly contradict the plain words of RCW 2.36.080(3) that "[a] citizen shall not be excluded from jury service in this state on account of . . . economic status." The essence of this guarantee would be subverted if it is deemed merely a rule of summoning.

The corollary argument is that one is "considered" for jury service by being summoned and by being part of the jury pool. Any surface sheen to this argument is lost once the world outside the covers of the dictionary is examined. The policy of RCW 2.36.080(1) is to protect the "opportunity . . . to be considered for jury service." Presence in a jury pool is not jury

service. The opportunity to be in a jury pool is not the opportunity to sit on a jury when one cannot afford to do so. The opportunity to be in a jury pool is not the opportunity to be considered for jury service for those from whom the law itself exacts a severe economic penalty for that service.

The low rates of remuneration create a structural incentive to self-exclusion from this dignity of citizenship on the part of those who cannot afford to serve with those rates. In some cases, they create the unequivocal need to exclude oneself from this eminent privilege. In the face of this, to say that the opportunity to be considered for jury service is preserved by the opportunity to be in the jury pool leaves little of logic and even less of RCW 2.36.080(3). That argument should be spurned.

The policies of RCW 2.36.080(1) and (2) and the terms of RCW 2.36.080(3) show that the latter is violated by the low rates afforded jurors in King County. Without a right of action, those deprived of the right and privilege guaranteed by RCW 2.36.080(3) are left without recourse. The second *Bennett* inquiry is met.

The third *Bennett* inquiry is whether implying a remedy is consistent with the underlying purpose of the legislation. The majority contends this is not met based on the same "opportunity to be considered" argument presented above. That argument should not prevail for the reasons set out above. For the same reasons the second *Bennett* inquiry is satisfied, so is the third.

Each of the considerations in *Bennett* speak strongly in favor of an implied cause of action. To keep the right established by RCW 2.36.080(3) something more than a hollow linguistic exercise, those deprived of that right must have the ability to vindicate it through legal action.

23

No.  51823-6-II

## IV.  THE APPELLANTS HAVE STANDING

The majority argues the appellants have not shown the injury in fact needed to have standing to seek a declaratory judgment that the County is violating RCW 2.36.080(3).  This follows, the majority argues, because if the appellants seek to be excused from jury duty due to economic hardship, they will have been excused due to their own request, not because of the County's actions.  Thus, appellants cannot show injury in fact resulting from King County's actions.

This argument fails for the reasons set out above.  For those with low paying jobs lacking leave for this purpose, serving on a jury with such minute payment may come at the cost of missed payments or a lost job.  Excluding oneself from jury service may be the only way to shelter oneself or one's family from these sobering risks.  With such realities, the decision to exclude oneself cannot be called voluntary.  That decision, rather, is the product of the County's choice to afford such negligible remuneration for jury service.  The justice system itself excludes those in such straits on account of their economic status.

When the government causes a citizen, in this manner, to forego a right guaranteed by law, that citizen has suffered an injury in fact.  That injury, especially to a right as elemental as jury service, is more than sufficient to warrant recourse to the courts to protect the integrity of the right.  The appellants have standing.

## V.  CONCLUSION

Neither the United States nor the Washington constitution announces an economic system.  Rather, they prescribe a system of governance and of rights under law.  Even in our compromised democracy, the ultimate sovereignty in that system rests with the people. That, in

24

turn, demands a sense of civic engagement and responsibility by the citizenry. The more those are lost, the fainter is that ultimate sovereignty. Jury service nurtures those civic values. It allows the citizen to don an invisible robe and for a time take his or her place in the judicial system, affording a profound source of civic engagement and, one may hope, the lessons that come from it.

RCW 2.36.080(3) means that no one shall be denied that invisible robe due to economic status. The low rates of juror remuneration afforded by King County do just that. They make jury service economically impossible as a practical matter for many low income citizens, thus placing many already near the margins of society even further from the sense of belonging to it. Just as damaging, this failure also robs juries of the perspective of the struggling and the outcast, allowing the interests of the privileged even more purchase in a system we claim is one of equal justice under the law.

The low remuneration by King County excludes citizens from jury service in violation of RCW 2.36.080(3). Those injured by this exclusion have recourse to the courts to vindicate their rights under that statute.[7] Therefore, I dissent.

Bjorgen, J.T.

---

[7] The more difficult issue of the amount of juror compensation needed to avoid such exclusions is not within the scope of this appeal.