**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
APRIL 9, 2020

*Signature*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
APRIL 9, 2020

*Signature*
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| RYAN ROCHA, | ) | No. 96990-6 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| NICOLE BEDNARCZYK, and | ) | |
| CATHERINE SELIN, individually and on | ) | |
| behalf of all others similarly situated, | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| KING COUNTY, a municipal corporation, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | Filed April 9, 2020 |

JOHNSON, J.—This case involves claims against King County generally regarding jury selection and compensation and raises the following three issues: (1) whether petitioners have standing under the Uniform Declaratory Judgments Act (UDJA), ch. 7.24 RCW, (2) whether jurors are employees entitled to minimum wage under Washington's Minimum Wage Act (MWA), ch. 49.46 RCW, and (3)

whether RCW 2.36.080(3)[1] creates an implied cause of action for increased juror reimbursement based on economic status. Petitioners Nicole Bednarczyk and Catherine Selin seek reversal of a Court of Appeals decision affirming the superior court's summary judgment dismissal of their declaratory relief, minimum wage, and disparate impact claims regarding jury service in King County.[2] We affirm the Court of Appeals.

## FACTUAL AND PROCEDURAL HISTORY

Jurors have been provided payments pursuant to statute since 1881, before Washington became a state. CODE OF 1881, § 2086. RCW 2.36.150 sets the range for juror expense payments and directs the county legislative authorities to determine the amount of the expense payment within that range.[3] King County,

---

[1] In 2018, the legislature enacted LAWS OF 2018, ch. 23, § 1, amending RCW 2.36.080(3) and .080(4). Except when quoting language from the statute, this opinion cites to the current version of the statute.

[2] Many organizations appeared as amici in this matter, filing the following amici briefs: a joint brief by Washington State Association of Counties and Washington State Association of County Clerks; a joint brief in support of petitioners by Washington Employment Lawyers Association, Fair Work Center, and Seattle University Workers' Rights Clinic; the King County Department of Public Defense; a joint brief filed by American Civil Liberties Union of Washington, the American Civil Liberties Union of Washington Foundation, the American Civil Liberties Union, the Fred T. Korematsu Center for Law and Equality, Washington Association for Criminal Defense Lawyers, Civil Survival Project, Public Defender Association, South Asian Bar Association of Washington, Loren Miller Bar Association, Legal Voice, Washington Defender Association, and OneAmerica; a joint brief in support of petitioners by Public Justice and the American Association for Justice; and Washington State Association for Justice Foundation.

[3] "Jurors shall receive for each day's attendance, besides mileage . . ., the following expense payments:" grand, petit, coroner's, and district court jurors "may receive up to twenty-five dollars but in no case less than ten dollars." RCW 2.36.150.

under its legislative authority, has chosen to pay jurors in King County a $10 expense payment plus mileage reimbursement, which is the same statutory rate jurors received in 1959. *See* LAWS OF 1959, ch. 73, § 1. Although the statute allows an expense payment of up to $25 per day, King County, along with many other counties, have chosen the statutory minimum of $10 per day. This daily rate falls below Washington's then minimum wage of $12 per hour ($84 for a seven-hour work day). RCW 49.46.020(1)(c).

Historically, courts have struggled with poor juror summons response rates, which is a complex problem with many contributors, including undeliverable summons and low juror reimbursement. Studies have been conducted and recommendations made to address the low juror response rates. In 2000, the Washington State Jury Commission recommended that "legislation should be drafted requiring that current fees be raised, with the increase funded by the state." WASH. STATE JURY COMM'N, REPORT TO THE BOARD FOR JUDICIAL ADMINISTRATION x (July 2000), https://www.courts.wa.gov/committee/pdf/Jury_Commission_Report.pdf [https://perma.cc/4AVL-6YNV]. In 2006, the legislature authorized a research project in select jurisdictions to assess whether increasing juror expense reimbursement to $62 per day plus mileage reimbursement would improve juror turnout. LAWS OF 2006, ch. 372, § 903. While the pilot project did not significantly

improve juror turnout, the project also found that most jurors who did not respond or serve were unaware of the increase. WASH. STATE CTR. FOR CT. RES., JUROR RESEARCH PROJECT: REPORT TO THE WASHINGTON STATE LEGISLATURE 4 (Dec. 2008), https://www.courts.wa.gov/subsite/wsccr/docs/Juror%20Research%20Report%20Final.pdf [https://perma.cc/CWF4-ULVH].

In 2016, petitioners filed this class action complaint in Pierce County Superior Court asserting claims against King County alleging that (1) jurors are employees and entitled minimum wage and (2) RCW 2.36.080(3) creates an implied cause of action for disparate impact based on economic status.[4] Petitioners allege that low rates of expense reimbursement have a greater impact on low-income jurors and assert that this causes many jurors to seek excusal on the basis of financial hardship or to simply not respond to summons.

Factually, in 2012, petitioner Bednarczyk was summonsed for jury duty in King County and sought and received a hardship excusal from jury service.[5] In 2015, Selin was summonsed and served 11 days of jury duty in King County. Selin

---

[4] The complaint originally included claims by Ryan Rocha alleging racial discrimination under the Washington Law Against Discrimination, ch. 49.60 RCW, and under former RCW 2.36.080(3) (2015); however, these claims were voluntarily dismissed prior to summary judgment and are not included in this appeal.

[5] It is claimed the excusal was for financial hardship because Bednarczyk's employer did not compensate employees for time spent performing jury duty. The letter from petitioner Bednarczyk's employer presented to the court that granted her hardship excusal request also provided that she was an essential figure at the small business who could not be spared.

was self-employed. Selin would have received $110 plus mileage reimbursement at King County's current reimbursement rates.

Petitioners were included in the master jury list from which King County randomly selects citizens for jury duty.[6] No challenge is asserted concerning the methodology used to compile the list.

The superior court granted King County's motion for summary judgment and dismissed petitioners' claims. Petitioners appealed. The Court of Appeals affirmed in a 2-1 decision, holding that petitioners lacked standing under the UDJA, there was no implied cause of action for disparate impact, and jurors were not employees under the MWA. Judge Bjorgen dissented, opining that petitioners met their burden of standing and that an implied cause of action existed for disparate impact. The dissenting opinion did not address the MWA issue. *Rocha v. King County*, 7 Wn. App. 2d 647, 435 P.3d 325, *review granted*, 193 Wn.2d 1017, 448 P.3d 664 (2019).

## ANALYSIS

We review orders of summary judgment and statutory interpretation issues de novo. Summary judgment is proper if, viewing facts and reasonable inferences in the light most favorable to the nonmoving party, no genuine issue of material

---

[6] While petitioners assert they are representative of various classes, including an economic disparity class asserted by Bednarczyk, no class was certified prior to summary judgment and dismissal.

fact exists and the moving party is entitled to judgment as a matter of law. *Bostain v. Food Express, Inc.*, 159 Wn.2d 700, 708, 153 P.3d 846 (2007).

I

First, we address whether petitioners have standing under the UDJA. We find that standing is satisfied for the purpose of analyzing the claims asserted.

Standing is determined by a two part test: (1) whether the interest sought to be protected is "'*arguably* within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question'" and (2) whether the petitioners have *asserted* "'"injury in fact."'" *Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 802, 83 P.3d 419 (2004) (emphasis added) (internal quotation marks omitted) (quoting *Save a Valuable Env't v. City of Bothell*, 89 Wn.2d 862, 866, 576 P.2d 401 (1978)). When we are faced with an issue of significant public interest, standing is analyzed in terms of the public interests presented, and we engage in a more liberal and less rigid analysis. *See Farris v. Munro*, 99 Wn.2d 326, 330, 662 P.2d 821 (1983).

Standing for the petitioners' UDJA claims is premised on the existence of the statutory rights petitioners assert. Because we must analyze the merits of petitioners' arguments to determine whether petitioners have rights that could be asserted in a UDJA claim, standing is satisfied for the purpose of analyzing these claims, and we reach the merits.

II

We next address whether jurors are employees for the purposes of minimum wage. While the minimum wage and implied cause of action claims are related, our analysis of the implied cause of action claim depends somewhat on our resolution of whether jurors are employees under the MWA. We find, on several grounds, that jurors are not employees under the MWA under chapter 49.46 RCW or otherwise.

Turning to the statutory provisions, cases involving statutory interpretation analysis begin with the statutory language. The MWA defines "employee" broadly as "any individual employed by an employer" and defines "employ" as "to permit to work." RCW 49.46.010(3), (2). Instead of being primarily defined by employments included, the MWA carves out from the definition of "employee" more narrow provisions that operate as exemptions. We construe MWA exemptions narrowly; exemptions apply only to situations that are plainly and unmistakably consistent with the terms and spirit of the legislation. *Drinkwitz v. Alliant Techsystems, Inc.*, 140 Wn.2d 291, 301, 996 P.2d 582 (2000). The MWA excludes from the definition of "employee"

> [a]ny individual engaged in the activities of a[] . . . state or local governmental body or agency . . . where the employer-employee relationship does not in fact exist or where the services are rendered to such organizations gratuitously. If the individual receives reimbursement in lieu of compensation for normally incurred out-of-pocket expenses or receives a nominal amount of compensation per

> unit of voluntary service rendered, an employer-employee relationship is deemed not to exist for the purpose of this section.

RCW 49.46.010(3)(d). Based on this language, jurors are excluded from the definition of "employee" because they receive reimbursement in lieu of compensation while engaged in the activities of a local governmental body. The legislature's characterization of juror payments as expense payments in RCW 2.36.150 is consistent with this view. *See also* FINAL B. REP. ON SUBSTITUTE S.B. 6261, at 1, 58th Leg., Reg. Sess. (Wash. 2004) ("Juror compensation received by federal employees must be credited against the employee's pay. However, payments made to reimburse jurors for their out-of-pocket expenses need not be credited against an employee's pay.").

Petitioners contend that this exception applies only to voluntary employees rendering gratuitous services, partially relying on legislative history. *See* Appellants' Am. Opening Br. at 36-39 (Wash. Ct. App. No. 51823-6-II (2017)). The second sentence of the above provision details circumstances where the employer-employee relationship does not exist. Contrary to petitioners' assertion, this clause supplements the meaning of "employer-employee relationship" rather than applying to only the gratuitous services portion outlined in the first sentence. While the meaning of this provision may have its roots in reaching voluntary employees, the meaning is also reflected in the statutory language used.

The structure of this provision establishes that "voluntary" applies only to the nominal compensation clause and does not apply to the reimbursement clause because the two clauses repeat the word "receives" and are separated by an "or." The statutory language in RCW 49.46.010(3)(d) provides that when no employer-employee relationship exists, the MWA does not apply. Under the statutory language, no employer-employee relationship exists where individuals are engaged in the activities of a local governmental entity and are provided with reimbursement in lieu of compensation, which is what occurs in the case of jurors who receive expense reimbursements provided for under RCW 2.36.150.

In further support of their argument, petitioners rely on our decision in *Bolin v. Kitsap County*, where we held that a juror who was injured in a car wreck driving home from jury service was an employee acting within the scope of employment and entitled to benefits under the Industrial Insurance Act (IIA), Title 51 RCW. 114 Wn.2d 70, 71-72, 785 P.2d 805 (1990). The Court of Appeals held that *Bolin* was distinguishable because *Bolin* decided the status of jurors under the IIA, not under the minimum wage provision at issue here. We agree.

Our holding in *Bolin* was not so broad as to extend outside the confines of the IIA. *Bolin* focused on the specific language of the IIA and how the IIA "list[ed] only employments *excluded*," citing RCW 51.12.020. *Bolin*, 114 Wn.2d at 72 ("Jury service is not within the list of those employments excluded."). Under this

9

specific statutory analysis, *Bolin* held jurors were employees for IIA purposes. Critically, the MWA definition of employee differs from the IIA because the "no employer-employee" relationship provision under the MWA is not found in the IIA. *Bolin* is limited to the status of jurors under the IIA and does not control the analysis of the MWA.

Petitioners assert further that applying the "economic realities test" for employment from *Anfinson v. FedEx Ground Package System, Inc.*, 174 Wn.2d 851, 281 P.3d 289 (2012), would result in the MWA applying to jurors, but we need not reach the "economic realities test" because we find jurors are exempt from the MWA under its express provisions. We do, however, note that jurors occupy a unique and important place in our society. The United States Supreme Court, and other courts, have recognized that "[j]ury service is a duty as well as a privilege of citizenship; it is a duty that cannot be shirked on a plea of inconvenience or decreased earning power." *Thiel v. S. Pac. Co.*, 328 U.S. 217, 224, 66 S. Ct. 984, 90 L. Ed. 1181 (1946). Jury service "'affords ordinary citizens a valuable opportunity to participate in a process of government . . . .' Indeed, with the exception of voting, for most citizens the honor and privilege of jury duty is their most significant opportunity to participate in the democratic process." *Powers v. Ohio*, 499 U.S. 400, 407, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991) (quoting *Duncan v. Louisiana*, 391 U.S. 145, 187, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968)

(Harlan, J., dissenting)). Indispensable to our system of government, jurors represent a ground level exercise of our democratic values. *State v. Saintcalle*, 178 Wn.2d 34, 50, 309 P.3d 326 (2013) (plurality opinion).

Based on the unique nature of jury service, it follows that jurors are not employees in the traditional sense of the term. Neither amici nor petitioners have cited to any decision from any jurisdiction where a court has found jurors to be employees for the purposes of minimum wage. By contrast, King County points out several cases to the contrary. In *Brouwer v. Metropolitan Dade County*, the court held that jurors were not employees for the purposes of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219. 139 F.3d 817 (11th Cir. 1998). There, the court adopted the reasoning of the district court and quoted the following in support of its holding:

> "Jurors are completely different from state [or county] employees. Jurors do not apply for employment, but are randomly selected from voter registration lists. Jurors are not interviewed to determine who is better qualified for a position; the State summons all available persons who meet the basic requirements. . . . Jurors do not voluntarily tender their labor to the state, but are compelled to serve. Jurors are not paid a salary, rather they receive a statutorily mandated sum regardless of the number of hours worked. Jurors are not eligible for employment benefits, do not accrue vacation time, annual or sick leave and do not qualify for health or life insurance. The state does not have the power to fire jurors for poor performance, but must accept their verdict. In short, there is no indicia of an employment relationship between state court jurors and Dade County."

*Brouwer*, 139 F.3d at 819 (alterations in original). Other courts have similarly held jurors are not employees for purposes of minimum wage. *See, e.g.*, *Patierno v. State*, 391 So.2d 391, 392-93 (1980); *St. Clair v. Commonwealth*, 451 S.W.3d 597, 622-23 (2014); *North Carolina v. Setzer*, 256 S.E.2d 485, 488 (1979). We agree.

We find that jurors are not employees entitled to minimum wage for the purposes of the MWA because no employer-employee relationships exists statutorily under RCW 49.46.010(3)(d) or otherwise.

## III

The third issue raised is whether RCW 2.36.080(3) creates an implied cause of action for disparate impact based on economic status, allowing jurors to seek increased reimbursement.

In determining whether a statute creates an implied cause of action, we use the three-factor analysis established in *Bennett v. Hardy*, 113 Wn.2d 912, 920-21, 784 P.2d 1258 (1990). The factors are (1) whether the plaintiff is within the class for whose "'especial'" benefit the statute was enacted, (2) whether legislative intent supports creating or denying a remedy, and (3) whether implying a remedy is consistent with the underlying purpose of the legislation. *Bennett*, 113 Wn.2d at 920. We have reasoned that the common law may establish a remedy where a statute provides a right but does not provide a specific remedy. *Bennett*, 113 Wn.2d at 919-21. Petitioners here seek an implied remedy for a prospective juror's right to

12

protection from exclusion based on economic status under former RCW

2.36.080(3). Petitioners make no challenge to the expense payment provision under

RCW 2.36.150 (between $10 and $25 per day plus mileage), but they assert that an

implied cause of action exists for jurors to sue for increased payments under RCW

2.36.080(3) in addition to the expense reimbursement payments authorized under

RCW 2.36.150.

Former RCW 2.36.080 (2015) provides the following regarding jurors:

(1) It is the policy of this state that all persons selected for jury service be selected at random from a fair cross section of the population . . ., and that all qualified citizens have the opportunity . . . to be considered for jury service in this state and have an obligation to serve as jurors when summoned for that purpose.
        (2) It is the policy of this state to maximize the availability of residents of the state for jury service. It also is the policy of this state to minimize the burden on the prospective jurors, their families, and employers resulting from jury service. The jury term and jury service should be set at as brief an interval as is practical given the size of the jury source list for the judicial district. The optimal jury term is one week or less. Optimal juror service is one day or one trial, whichever is longer.
        (3) A citizen shall not be excluded from jury service in this state on account of . . . economic status.
        (4) This section does not affect the right to peremptory challenges under RCW 4.44.130.

In *Bennett*, former employees sued their employer, who employed fewer

than eight employees, alleging age discrimination. Because their employer had

fewer than eight employees, no cause of action existed under the Washington Law

Against Discrimination (WLAD), ch. 49.60 RCW, that by its express terms applied

only to employers with eight or more employees. However, a separate statute,

RCW 49.44.090 declared age discrimination to be an unfair practice. We held that

RCW 49.44.090 created an implied cause of action for age discrimination and that

no legislative intent existed indicating the WLAD intended to limit the application

of RCW 49.44.090. In reaching this holding, we relied on the *Restatement*

*(Second) of Torts* § 874A (Am. Law Inst. 1979), which provided that

> "[w]hen a legislative provision protects a class of persons by
> proscribing or requiring certain conduct but does not provide a civil
> remedy for the violation, the court may, if it determines that the
> remedy is appropriate in furtherance of the purpose of the legislation
> and needed to assure the effectiveness of the provision, accord to an
> injured member of the class a right of action."

*Bennett*, 113 Wn.2d at 920. We borrowed the three factors from the federal implied

cause of action test. Applying these factors, we noted that RCW 49.44.090

established a clear legislative intent and purpose aimed at confronting the problem

of age discrimination.

The Court of Appeals opinions below diverged on how these factors apply.

Both the majority and dissent found the first factor was satisfied. The majority

found the second and third factors were not satisfied, reasoning the legislature

intended to protect only the opportunity to serve and did not intend to guarantee

the financial ability to serve. The dissent disagreed, reasoning that limiting the

protection from exclusion to the opportunity to serve would permit intentional

exclusion based on economic status so long as jurors were included on the master

14

jury list. The dissent found the second and third factors were satisfied, reasoning King County created a structural incentive for jurors to request hardship excusals by not paying above the statutory rates.

When analyzing the express statutory provisions, it is difficult to find that the statute, allowing hardship excusals through its intended operation, works to effect a systematic exclusion of jurors based on economic status. Nothing in the statutory language of RCW 2.36.080 can be read to be exclusory. Subsection (1) contains language adopting a policy about as express and inclusive as could be written. RCW 2.36.080(1) ("[A]ll qualified citizens have the *opportunity* . . . to be considered for jury service . . . ." (emphasis added)). Subsection (2) expresses a policy of maximizing participation and minimizing the burdens of jury service. And subsection (3) expresses that exclusion shall not be based on economic status or other protected statuses.

It makes no logical sense to read subsection (3) to imply a cause of action for economic status discrimination where the provision says the opposite—the purported "exclusion" occurs because judges grant hardship requests *made by jurors* under RCW 2.36.100. Even when we engage in an in-depth *Bennett* factor analysis, construing the facts in the light most favorable to petitioners' assertion that low-income jurors are forced to make hardship requests because of the low rate of compensation, no implied cause of action can be found.

As to the first *Bennett* factor, the statute protects citizens from being excluded from jury service on account of economic status. We need not engage in a detailed analysis of this factor because even if we assumed this factor was satisfied it would not change the result as we find that the other two factors of the *Bennett* test are not met.

To aid in our analysis, it instructive to look to the case from which *Bennett* borrowed the three-factor test. Regarding the second and third factors, the Ninth Circuit Court of Appeals wrote that

> [p]laintiffs must establish that Congress intended to provide for the private remedy which they ask us to imply or at least that it is consistent with the legislative scheme. While a private remedy may be inferred from the plain language of the statute, the statutory structure, or some other source, we "'will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide,'" even if the plaintiff can show that he is a member of the class for whose benefit the statute was enacted and that there is no state-law impediment to implication of a remedy.

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 823 F.2d 1349, 1353 (9th Cir. 1987) (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 145, 105 S. Ct. 3085, 87 L. Ed. 2d 96 (1985) (quoting *California v. Sierra Club*, 451 U.S. 287, 297, 101 S. Ct. 1775, 68 L. Ed. 2d 101 (1981))) (the second and third factors were also referred to as "congressional intent" and "statutory consistency"). The above suggests that the second *Bennett* factor requires us to determine whether legislative intent supports implying the *requested remedy*, rather than any remedy, and

16

suggests that the third *Bennett* factor looks to the entire statutory scheme to determine whether the requested remedy is consistent.

Here, as to the second factor, even though legislative intent may slightly support an implied remedy for jurors who are excluded on the basis of a protected characteristic under RCW 2.36.080(3), it does not support the requested remedy of increased juror pay. The language of the statute evidences an intent to prohibit acts of exclusion, rather than requiring counties to pay minimum wage to discourage jurors from self-excluding by seeking hardship excusals.

Further, the statutory term "excluded" implies that direct action must be taken to "exclude." "Exclude" is defined as "to shut out," "to bar from participation, enjoyment, consideration, or inclusion," "to put out," or "to eject." WEBSTER'S THIRD NEW INT'L DICTIONARY 793 (2002). The statutory language and overall statutory scheme express a policy of inclusion and cannot be read to mean the opposite. If we accepted petitioners' argument, the meaning of exclude would encompass the hardship excusals under RCW 2.36.100 and judges would be, in effect, "excluding" jurors every time a hardship excusal was granted.

Petitioners assert that *Thiel*[7] and *Taylor*[8] support implying a cause of action for the alleged exclusion in this case. However, *Thiel* and *Taylor* support

---

[7] *Thiel*, 328 U.S. at 224.

[8] *Taylor v. Louisiana*, 419 U.S. 522, 523, 95 S. Ct. 692, 42 L. Ed. 2d 690 (1975).

prohibiting express acts of exclusion rather than supporting requiring counties to pay above the statutory rates in an effort to discourage jurors from self-excluding. In *Thiel,* the county excluded daily wage earners prior to summonsing because the county predicted such wage earners would seek hardship exemptions. *Thiel*, 328 U.S. at 224. In *Taylor*, women were required to opt-in before being summonsed for jury duty, thus excluding women by keeping them off the juror lists until they opted-in. 419 U.S. at 523. In both *Thiel* and *Taylor*, jurors were not summonsed and thus excluded from the opportunity to serve. Here, by contrast, petitioners were included on the master jury list and either served or self-excluded by requesting a hardship excusal.

Petitioners argue that because former RCW 2.36.080(2) establishes a policy of maximizing juror availability and minimizing the burden on "prospective jurors, their families, and employers," a cause of action for increased juror pay furthers legislative intent. However, the sentences that follow these provisions provide a policy of setting jury terms as short as possible, evidencing an intent to provide more narrow methods for accomplishing the policies under RCW 2.36.080(2). The statute does not create any exclusion. Rather than *exclude* by low rates of juror pay, the statute *includes* all eligible persons for summonsing regardless of economic status.

The legislative history also provides evidence that juror compensation was not intended to be connected to minimum wage. When the legislature amended RCW 2.36.080, adding the economic status protection, it also amended RCW 2.36.150, establishing that counties reimburse jurors between $10 and $25 per day. LAWS OF 1979, 1ST EX. SESS., ch. 135, §§ 6, 7. In 1979, Washington's minimum wage was $2.30 per hour, which amounts to $16.10 for a seven-hour day. LAWS OF 1975, 1ST EX. SESS., ch. 289, § 2(1). The same legislature that enacted the protection upon which petitioners rely amended RCW 2.36.150, explicitly authorizing counties to reimburse jurors for each day of service at a rate based on daily attendance, not a rate based on "hours worked."

As to the third *Bennett* factor, the overall statutory scheme does not support implying the requested remedy of increased juror pay. The discussion of the second factor above somewhat applies to our analysis of the third factor. As King County argues and the Court of Appeals majority held, RCW 2.36.080(1) does not support implying an increase in pay because it establishes a policy that "qualified citizens *have the opportunity . . . to be considered for jury service*," which suggests this policy is limited to the master jury list. *Rocha*, 7 Wn. App. 2d at 654 (alteration in original). The dissenting Court of Appeals opinion opined that the protection from exclusion under RCW 2.36.080(3) cannot be limited to the *opportunity* to serve because such a reading would allow intentional acts of

19

exclusion so long as jurors were included on the master jury list. While this argument has some merit, the policy articulated in .080(1) applies only to the *opportunity* to serve by its express language. Applying a broad interpretation to the protection from exclusion under .080(3) does not expand the reach of the policy articulated under .080(1).

We find no legislative intent to support an implied cause of action allowing jurors to seek a remedy for damages or requiring increased pay. RCW 2.36.080 contains no reference to compensation. Instead, RCW 2.36.150 sets rates of reimbursement, and the legislature provided an option for jurors who would still experience significant hardship despite short jury terms—excusal on a showing of "*undue* hardship" under RCW 2.36.100. (Emphasis added.) We hold RCW 2.36.080(3) does not create an implied cause of action to allow jurors to sue for increased reimbursement rates.

IV

Finally, petitioners and various amici urge this court to invoke our inherent judicial authority—independent of the statutes at issue—to require paying jurors at increased rates. The most relevant case relied on for this argument is *In re Salary of Juvenile Director*, 87 Wn.2d 232, 251, 552 P.2d 163 (1976).[9] We need not and

---

[9] While judges and the legal community have recognized for years that a $10 expense reimbursement rate for jurors is embarrassingly low, the solution has consistently been to request

do not, however, reach these arguments because they exceed the scope of this case, not having been raised in the complaint or the courts below.[10] Further, any exercise of our inherent authority in the area of juror pay would likely impact counties across the entire state, and this case is limited to claims against King County, not the other 38 counties or the state as a whole.

While we do not reach the inherent authority arguments, we take this opportunity to comment that low juror reimbursement is a serious issue that has contributed to poor juror summons response rates. The concerns raised by amici and petitioners as to the impact of low juror reimbursement on juror diversity, low-income jurors, and the administration of justice as a whole are valid points. While we should continue to cooperate with the other branches of government in an effort to address the long-standing problems identified by petitioners and amici, these concerns are best resolved in the legislative arena.

---

the legislature to amend (and raise) the rate established under RCW 2.36.150. Similarly, *Juvenile Director* encourages interbranch cooperation and warns against the unrestrained exercise of our inherent judicial authority at the expense of the public's confidence and trust in the judiciary.

[10] Clerk's Papers at 155-96; Report of Proceedings at 6 (During the summary judgment hearing, Mr. Needle, counsel for petitioners, stated, "We agree that this is a matter for the legislature . . . . We're simply asking the Court to interpret the statute and nothing more.").

## CONCLUSION

We affirm the Court of Appeals. We find that standing is satisfied for the purpose of analyzing the UDJA claims. We find that jurors are not employees entitled to minimum wage under the MWA or otherwise. We find that there is no implied cause of action for requiring increased pay for jurors under former RCW 2.36.080(3).

WE CONCUR:

Stephen, C.J.

Geo. McCaf, J.

Owens, J.

Wiggins, J. PT

Fairhurst, JPT.

No. 96990-6

YU, J. (concurring in part and dissenting in part) — I agree with the majority that the plaintiffs have standing pursuant to RCW 7.24.010, that jurors are not employees pursuant to the Minimum Wage Act, ch. 49.46 RCW, and that RCW 2.36.080(3) does not create an implied cause of action for increased juror pay.

However, I cannot join the majority's analysis of the *Bennett* factors. *See Bennett v. Hardy*, 113 Wn.2d 912, 920-21, 784 P.2d 1258 (1990). Specifically, I agree with the dissent that a $10 per day reimbursement rate for juror pay systematically excludes individuals from jury service based on their economic status. As a result, our jury pools do not adhere to the state's policy that jurors are selected from "a fair cross section of the population." RCW 2.36.080(1). That being said, RCW 2.36.080(3) does not create a private right of action for increased juror pay to remedy this exclusion. To the extent that the statute may imply some

1

other cause of action, that question is not before the court in this case. I therefore respectfully concur in part and dissent in part.

## ANALYSIS

I agree with the majority that the second and third factors of the *Bennett* test do not support an implied cause of action for increased juror pay pursuant to RCW 2.36.080(3). Majority at 16-17. However, I do not agree that excusal is voluntary and therefore not exclusory. *Id*. at 15. All too often inadequate juror compensation is a barrier to jury service that disproportionately impacts low income and minority populations. I would hold that the system *is* exclusory, but the remedy for this exclusion lies with the legislature, not with the courts.

A.     The plaintiffs are within the class for whose special benefit the statute was enacted

The majority does not decide whether the plaintiffs satisfied the first prong of the *Bennett* test. *Id*. at 16. Instead the majority asserts that no analysis of this factor is required "because even if we assumed this factor was satisfied it would not change the result." *Id*. On this point, I would hold that the Court of Appeals properly determined that "the plain language of the statute protects people from being excluded from jury service based on economic status," therefore the plaintiffs are within the class for whose benefit RCW 2.36.080(3) was enacted.

*Rocha v. King County*, 7 Wn. App. 2d 647, 654, 435 P.3d 325 (2019); *see also*

dissent at 3.

B.      Economically distressed jurors are systematically excluded from jury
        service, but their remedy is not an implied cause of action for increased juror
        pay pursuant to RCW 2.36.080(3)

I agree with the majority that RCW 2.36.080(3)'s legislative intent "does not

support the requested remedy of increased juror pay" and that "the overall statutory

scheme does not support implying the requested remedy of increased juror pay."

Majority at 17, 19.  Furthermore, I agree with the State that implying a cause of

action for increased juror pay would impermissibly intrude on the legislature's

budgetary authority.  Resp't King County's Suppl. Br. at 15-17.  This is not to say,

however, that RCW 2.36.080(3) provides no private right of action whatsoever.  It

is only to say that the statute does not create the specific private right of action at

issue in this case.

Although I join the majority's holding that the plaintiffs do not satisfy the

second and third prongs of the *Bennett* test, I do not agree with its reasoning.

Specifically, I do not agree with the majority's assertion that "it is difficult to find

that the statute, allowing hardship excusals through its intended operation, works to

effect a systematic exclusion of jurors based on economic status."  Majority at 15.

To the contrary, the pernicious effect of low juror compensation *is* the systematic

exclusion of all qualified citizens who simply cannot afford to participate.

This is not a new revelation. In 2017 the Minority and Justice Commission studied jury diversity in Washington State. The commission's Jury Diversity Task Force determined that "financial hardship is the second highest reason to excuse a potential juror, behind undeliverable summonses." JURY DIVERSITY TASK FORCE, MINORITY & JUST. COMM'N, 2019 INTERIM REPORT 3 (2019), https://www.courts.wa.gov/subsite/mjc/docs/Jury%20Diversity%20Task%20Force %20Interim%20Report.pdf [https://perma.cc/UDJ5-TFFB]. Further, the task force highlighted the concerning nexus between race and poverty that impacts jury service, noting that "lower income and minority populations are disproportionally affected by the financial hardships of jury service" and "are disproportionately likely to seek economic hardship excusals." *Id*. at 3, 2. Thus, the result is racially disproportionate juries. Given these findings, I cannot agree with the majority that the statute doesn't effectuate exclusion simply because "[n]othing in the statutory language of former RCW 2.36.080 can be read to be exclusory." Majority at 15.

Relatedly, the majority cites RCW 2.36.150's legislative history as evidence that "juror compensation was not intended to be *connected* to minimum wage." *Id*. at 19 (emphasis added). The majority notes that the legislature amended RCW 2.36.150 in 1979 to establish a county reimbursement rate between $10 and $25 per day and explains that "[i]n 1979, Washington's minimum wage was $2.30 per hour, which amounts to $16.10 for a seven-hour day." *Id*. While a compensation

rate between $10 and $25 per day may not have been directly *tied* to the minimum wage, it is significant that the reimbursement rate was much *closer* to the minimum wage when the statute was amended. Today, the statewide minimum wage is $13.50 per hour, which amounts to $94.50 for a seven-hour day. RCW 49.46.020(1)(d). In King County, where jurors are paid $10 per day, the minimum compensation is even higher.[1] Consequently, a King County worker earning $15.75 per hour makes $110.25 over the course of a seven-hour work day. This in turn means that prospective jurors must choose between meaningful earnings and civic participation that offers a small fraction of their daily compensation. Furthermore, as inflation and the cost of living continue to climb, a $10 daily reimbursement rate means that jurors will increasingly find jury service out of reach if their employer is unable to offer comparable compensation as an incentive for jurors to serve.

For these reasons, I would hold that RCW 2.36.080(3) does in fact exclude jurors from service on the basis of their economic status. While the statute does not guarantee a seat on a jury if summoned, current compensation rates virtually guarantee that juries will not represent a fair cross section of our communities

---

[1] Employers with fewer than 500 employees must offer a $13.50 minimum wage and $15.75 per hour minimum compensation, which includes paid health care or extra wages. KING COUNTY CODE 3.18.050-.060.

5

when the selection of jurors favors those who can afford to serve. This vexing problem has a clear solution; however, the remedy does not lie with the courts.


CONCLUSION

I would hold that the plaintiffs have standing and that jurors are not employees for purposes of the Minimum Wage Act. Further, I would hold that RCW 2.36.080(3) does not create an implied cause of action for increased juror pay because the second and third prongs of the *Bennett* test are not satisfied. That being said, we must acknowledge that inadequate juror compensation systematically excludes low income jurors, to the detriment of our justice system. It is time for the legislature to revisit this issue. I therefore respectfully concur in part and dissent in part.

Madsen, J.

No. 96990-6

GONZÁLEZ, J. (dissenting)—The constitutional right to a fair jury drawn from a representative cross section of society is a fundamental component of our democratic system. CONST. art. I, §§ 21, 22; U.S. CONST. amend. VI. The benefits of jury service to the court, to the community, and to the jurors themselves would be hard to overstate. As Alexis de Tocqueville wrote nearly two centuries ago:

> "[T]he institution of the jury raises the people itself, or at least a class of citizens, to the bench of judicial authority [and] invests the people, or that class of citizens, with the direction of society.
>
> . . . .
>
> ". . . The jury . . . invests each citizen with a kind of magistracy; it makes them all feel the duties which they are bound to discharge towards society; and the part which they take in the Government. By obliging [individuals] to turn their attention to affairs which are not exclusively their own, it rubs off that individual egotism which is the rust of society.
>
> . . . .
>
> "I do not know whether the jury is useful to those who are in litigation; but I am certain it is highly beneficial to those who decide the litigation; and I look upon it as one of the most efficacious means for the education of the people which society can employ."

*Powers v. Ohio*, 499 U.S. 400, 407, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991) (most alterations in original) (quoting 1 ALEXIS DE TOCQUEVILLE, DEMOCRACY IN AMERICA 334-37 (Schocken 1st ed. 1961)).

Unfortunately, the citizen's right to jury service and the litigant's right to a jury drawn from a fair cross section of society has been sharply limited through our history. Through much of that history, jury service and the jury selection process were anything but democratic. JEFFREY ABRAMSON, WE, THE JURY: THE JURY SYSTEM AND THE IDEAL OF DEMOCRACY 2-3 (1994).

As we strive, however imperfectly, to build a more perfect union, we must strive toward building more representative juries. *See, e.g.*, *City of Seattle v. Erickson*, 188 Wn.2d 721, 723-24, 398 P.3d 1124 (2017) (citing *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986)); *State v. Lanciloti*, 165 Wn.2d 661, 667-68, 201 P.3d 323 (2009). Given our society's history, our legislature has wisely recognized that jurors may not be excluded based on their membership in any protected class or on their economic status. RCW 2.36.080.

Despite this wise recognition that jurors should not be excluded because of economic status, the token King County pays jurors, $10 per day plus minor transportation reimbursement, accomplishes the very exclusion forbidden by law. When a seemingly neutral practice results in a systematic exclusion of a protected category of persons, it is discriminatory.[1]

---

[1] The majority suggests that the fact the jurors themselves request to be excluded from jury service means that they are not excluded by law. I disagree. The fact that the individual juror is put in the sad position of having to request an excuse because of

Properly understood, the jurors' rights act, RCW 2.36.080, prevents discrimination based on economic status. A cause of action is implicit. We may—and in this case should—imply a cause of action when a statute protects an identifiable group of people but contains no explicit enforcement mechanism. *Bennett v. Hardy*, 113 Wn.2d 912, 920-21, 784 P.2d 1258 (1990). We will find a cause of action when (1) the plaintiff is within the class for whose special benefit the statute was passed, (2) when legislative intent, explicitly or implicitly, supports creating a remedy, and (3) when a remedy is consistent with the underlying purpose of the legislation.

The plaintiffs are within the class intended to be protected by the jurors' rights act. The act specifically states that "[a] citizen shall not be excluded from jury service in this state on account . . . of economic status." RCW 2.36.080(3). True, the act, like our constitutional system, requires representational jury pools and fairly selected jurors for more than just the jurors' sake. *See Powers*, 499 U.S. at 407. "We have juries for many reasons, not the least of which is that it is a ground level exercise of democratic values." *State v. Saintcalle*, 178 Wn.2d 34, 50, 309 P.3d 326

---

foreseeable economic hardship does not exculpate the system that necessitates the request. As Judge Bjorgen wisely wrote in his dissent:

> Jury service is a full time job that can extend from less than a day to weeks. For those with low paying jobs without leave for this purpose, the cost of jury service may be a missed rent payment or skipped meals. For those without understanding employers, jury service may come at the cost of a job. Faced with such risk, the choice to exclude oneself is hardly voluntary.

*Rocha v. King County*, 7 Wn. App. 2d 647, 665, 435 P.3d 325, *review granted*, 193 Wn.2d 1017 (2019). I agree.

3

(2013) (Wiggins, J., lead opinion). Fully representational jury pools and fairly selected juries are also required to make our trials fair, our judgments legitimate, and our democracy inclusive. "When any large and identifiable segment of the community is excluded from jury service, the effect is to remove from the jury room qualities of human nature and varieties of human experience, the range of which is unknown and perhaps unknowable." *Peters v. Kiff*, 407 U.S. 493, 503, 92 S. Ct. 2163, 33 L. Ed. 2d 83 (1972). But inclusion is also for the individual jurors' sake; it gives them the dignity of participating in the judgments of our constitutional republic that their economic status might otherwise limit. *See Powers*, 499 U.S. at 407; *Saintcalle*, 178 Wn.2d at 50.[2]

The legislative intent plainly stated in the Jurors' Rights Act supports creating a remedy. The legislature has told us its intent:

> (1) It is the policy of this state that all persons selected for jury service be selected at random from a fair cross section of the population of the area served by the court, and that all qualified citizens have the opportunity in accordance with chapter 135, Laws of 1979 ex. sess. to be considered for jury service in this state and have an obligation to serve as jurors when summoned for that purpose.

---

[2] As a jurist once wisely observed:

> We have juries for many reasons, not the least of which is that it is a ground level exercise of democratic values. The government does not get to decide who goes to the lockup or even the gallows. Ordinary citizens exercise that right as a matter of democracy. In England, the jury developed into juries of one's peers, coming from one's community. This is the grand heritage of the jury system.

*Saintcalle*, 178 Wn.2d at 50 (Wiggins, J., lead opinion)

> (2) It is the policy of this state to maximize the availability of residents of the state for jury service. It also is the policy of this state to minimize the burden on the prospective jurors, their families, and employers resulting from jury service. The jury term and jury service should be set at as brief an interval as is practical given the size of the jury source list for the judicial district. The optimal jury term is one week or less. Optimal juror service is one day or one trial, whichever is longer.

RCW 2.36.080. Taken as a whole, .080 articulates the legislature's intent that the burdens and benefits of jury service be distributed widely and that every eligible citizen have the opportunity to be considered. The legislature explicitly meant to include those with economic hardship in jury pools and created rights in those with economic hardships that must be respected. RCW 2.36.080(3). Without a remedy, this policy will not be fulfilled. Those facing economic hardship will ask to be excused, and judges will properly grant the request. Denying a remedy will make the protections of .080(3) meaningless, which we will not do. *See Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996) (citing *Stone v. Chelan County Sheriff's Dep't*, 110 Wn.2d 806, 810, 756 P.2d 736 (1988)).

A remedy is consistent with this purpose. The low pay and low reimbursement rate amounts to an exclusion on the basis of economic status, denying such jurors the opportunity to serve as promised in RCW 2.36.080(1). The only meaningful way to accomplish the legislature's purpose of giving everyone the opportunity to serve is by creating a mechanism to vindicate those rights. A name on a master list is not meaningful service. Since the jurors' rights act contains an implied remedy,

the trial court erred in concluding otherwise. Thus, I would reverse its conclusion to the contrary.

I respectfully disagree with the majority that jurors' pay is limited to $25 per day under RCW 2.36.150. While the statute is not a model of clarity, read in full, it concerns reimbursement from the State. *See* RCW 2.36.150(4). Nothing would prevent the County from supplementing what the State requires.

I do agree with the majority that these plaintiffs have standing to bring their jurors' rights act claim in a declaratory judgment action under RCW 7.24.010. Under the Uniform Declaratory Judgments Act, the court has the power to declare rights. RCW 7.24.010. Plaintiffs have standing under the Uniform Declaratory Judgments Act (1) when they are within the zone of interests protected or regulated by the statute and (2) when they have suffered an injury in fact. *Am. Legion Post No. 149 v. Dep't of Health*, 164 Wn.2d 570, 593-94, 192 P.3d 306 (2008) (quoting *Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 802, 83 P.3d 419 (2004)).

For the same reasons the jurors' rights act contains an implied remedy, these plaintiffs are within the zone of interests the act protects. They have a right to the opportunity to serve. The low pay and reimbursement rate effectively deny them that right. The statute operates in that zone. Similarly, their systematic exclusion from the pool is an injury that these plaintiffs have suffered. They are being denied one of the fundamental tasks of a citizen in our democracy. Declaratory judgment is available.

I respectfully dissent.

González, J.